**Darren D. MONTGOMERY,
Plaintiff–Appellant,**

v.

**HONDA OF AMERICA MFG.,
INC., Defendant–Appellee.**

No. 01–3199.

United States Court of Appeals,
Sixth Circuit.

Sept. 24, 2002.

Before BOGGS and RYAN, Circuit Judges; HAYNES, District Judge.*

## OPINION

HAYNES, District Judge.

Plaintiff Appellant Darren D. Montgomery appeals the district court's grant of summary judgment to Defendant Appellee Honda of America Manufacturing, Inc. ["HAM"] on his claims of racial discrimination under Title VII of the Civil Right Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.*, and the Ohio Constitution, Ohio Rev. Code § 4112.99. Montgomery's specific claims are that HAM discriminated against him on the basis of his race by: (1) delaying his promotion to the position of Team Leader; (2) denying him the opportunity to rotate into an operator process; (3) denying his request to be assigned to the New Model Group; and (4) denying him the opportunity to work certain types of overtime. For the reasons set forth below, we AFFIRM the judgment of the district court.

## I. BACKGROUND

HAM hired Darren Montgomery as a production associate in the A-zone of the weld department on June 19, 1995. Montgomery was promoted to the position of Team Leader effective July 11, 1997. To be promoted to the position of Team Leader, a production associate employed in HAM's weld department had to pass the departmental weld test and have been employed within the department for a period of at least 12 months. Any production associate was entitled to take the weld test, and any associate who completed the test would be automatically considered for promotion. During the time that Mont-gomery worked in the A-zone, the weld test was administered three times, one in May 1996, a second time in August 1996, and a third occasion in April 1997. Plaintiff took only the April 1997 test, and was promoted to the position of Team Leader effective July 11, 1997. Montgomery was among the first group of production associates promoted to Team Leader after the April 1997 weld test.

Plaintiff, an African–American male, claims that HAM discriminated against him on the basis of his race because he was not promoted as quickly as similarly situated White employees with less experience. Montgomery named Chris Fleury, John Turner, and Chris Woodard as three White production associates who were treated more favorably because they were promoted in October 1996, while he was not promoted until July 1997. Yet, these associates, who were all hired at the same time or earlier than Montgomery, each took the weld test administered in August 1996, while Montgomery took the weld test administered in July 1997. There is not any evidence that HAM delayed Montgomery's taking of the weld test.

Montgomery next contends that HAM denied his request for assignment to the New Model Group based upon his race. Since February 1998, no team leaders or production staff associates in the weld department have been assigned to the New Model Group from other areas of the department. HAM decided to hire outside individuals, holding college degrees in engineering for these positions, with the exception of one coordinator who was assigned to the East Liberty Weld Department's New Model Group from the New Model Group in HAM's Marysville Weld Department in June

---

* The Honorable William J. Haynes, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

1999. Montgomery has not presented any evidence that HAM's stated reason for its New Model Group hiring was a pretext for racial discrimination.

Montgomery also testified that HAM engaged in racial discrimination by denying him certain types of overtime, specifically including holiday, weekend, post-shift maintenance, and post-shift new model overtime. HAM's records reflect that Montgomery worked a total of 764.8 hours of overtime from June 19, 1995 to July 11, 1997. During this time period, Montgomery worked holiday overtime during the December shutdown of the plant, including 8 hours on December 26, 1995; 5.25 hours on December 31, 1995; and 5 hours on January 1, 1996. Montgomery worked 51 different weekend days, for a total of 365.15 hours of weekend overtime during this time period. Montgomery also worked post-shift preventative maintenance overtime on 50 occasions for a total of 114.9 hours, and worked "new model" overtime on 8 separate occasions for a total of 42.5 hours.

On July 16, 1998, Montgomery filed this action against HAM, alleging four theories of race discrimination: (1) his promotion to the position of team leader was delayed; (2) he was denied the opportunity to work in Operation processes; (3) he was denied a requested assignment to the New Model Group; and (4) he was denied the opportunity to work various types of overtime. On July 14, 1999, HAM filed a motion for summary judgment on all claims.

The district court granted in part and denied in part Appellee HAM's summary judgment motion. The district court granted summary judgment to HAM on Appellant's delay in promotion theory. In so holding, the district court stated:

> [T]he evidence does not raise a genuine issue of material fact as to whether Plaintiff was similarly situated with those three production associates [that Plaintiff claims were treated more favorably]. As a consequence, Plaintiff has not set forth a prima facie case that he was discriminated against on the basis of his race, because he was not promoted until July, 1997, while [the three production associates] received their promotions during October, 1996.

\*　　\*　　\*　　\*　　\*　　\*

> Given that the evidence establishes that a production associate had to have taken the Weld Test before being eligible for a promotion and, further, since Plaintiff did not take that test until April, 1997, the Plaintiff has not presented evidence sufficient to raise a genuine issue of material fact that he was qualified for a promotion, at any time before he received his promotion on July 11, 1997.

The district court also granted summary judgment in favor of HAM on Appellant's denial of requested assignment to the New Model Group theory, stating:

> Based upon th[ ]se uncontroverted facts, the Court concludes that the Defendant has met its burden of articulating a non-discriminatory reason for refusing to permit the Plaintiff to transfer to the [New Model Group](assuming for sake of argument that the evidence raises genuine issues of material fact on the Plaintiff's prima facie claim of discrimination). The Plaintiff has neither presented evidence sufficient to raise a genuine issue of material fact on this issue, nor argued that the Defendant's decision to refuse to allow any Team Leader in the Weld Department to transfer to the [New Model Group] was a pretext for discrimination against him.

Finally, the court granted summary judgment in favor of HAM on Montgomery's claim that he was denied overtime based on his race. The court limited its

discussion of overtime to types other than that which occurred as a result of Montgomery not being permitted to rotate into the operator position, including: holiday, weekend, post-shift maintenance, and post-shift new model overtime. In so holding, the court noted that "while employed as a production associate, Plaintiff worked a total of 764.8 hours of overtime, which included 51 weekend days, a number of holidays and post-shift overtime on numerous days (both maintenance, 114.9 hours, and new model, 42.5 hours)." The court later stated:

> In the face of that evidence, the Plaintiff has not identified when he was denied overtime opportunities or whether similarly situated Caucasian production associates were given those opportunities .... In the absence of some evidence that he was denied the opportunity to work overtime, this Court concludes that the evidence fails to raise a genuine issue of material fact on this theory of discrimination.

The district court overruled HAM's motion for summary judgment as to Plaintiff's claim that he was denied the opportunity to rotate into the operator position based upon his race. Although the compensation and benefits are the same for operators and other production associates, Plaintiff testified that operators were permitted to work holiday overtime hours during the plant shutdown in July and December, and that such overtime was compensated at a triple time rate. The district court concluded that "the evidence raises a genuine issue of material fact as to whether the terms and conditions of Plaintiff's employment were adversely impacted by the deni-

al of his request to be rotated to the operator process." The court further determined that there was a genuine issue of material fact as to whether the Plaintiff was qualified for the position of operator. Accordingly, the court denied Honda's motion for summary judgment as to this theory of race discrimination.

Both parties moved for reconsideration of the district court's order. The district court overruled both motions for reconsideration, summarizing Montgomery's only remaining claim as follows:

> [T]he Court held that the lost opportunity to work overtime as an operator, when the East Liberty plant was shut down during the Christmas and Fourth of July holidays, was the only adverse employment action Plaintiff could have suffered, as a result of the allegedly discriminatory denial of a rotation to the position of operator.

Prior to the trial, Plaintiff made an oral motion to dismiss the sole remaining claim of lost opportunity to work overtime as an operator, as the result of race discrimination, when the plant was shut down during the Christmas and Fourth of July holidays.[1] The court sustained the oral motion to dismiss the remaining claim with prejudice, and directed the entry of final judgment in favor of HAM and against Plaintiff.

## II. ANALYSIS

This Court reviews a district court's order granting summary judgment *de novo*. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir.2000). Summary judg-

---

**1.** It appears that the district court erroneously stated that it was sustaining the Defendant's, rather than the Plaintiff's, motion to dismiss the remaining claim in the first sentence of the entry sustaining motion to dismiss. The title of the order correctly reflects that the court sustained the Plaintiff's motion to dismiss the remaining claim. Additionally, Plaintiff conceded at oral arguments that he made the motion to dismiss the remaining claim because that claim was not financially beneficial.

ment is appropriate where genuine issues of material fact are absent and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Court must view the evidence and draw all reasonable inferences therefrom in a light most favorable to the non-moving party. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir.2000). Yet, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Montgomery asserts race discrimination claims under Title VII of the Civil Rights Act of 1964 and the Ohio Constitution, Ohio Rev.Code § 4112.99. Under Title VII, it is unlawful for an employer to discharge or otherwise discriminate against an individual with respect to compensation, terms, conditions or privileges of employment on the basis of the individual's race, color, religion, sex or national origin. 42 U.S.C. § 2000e–2(a). To support a claim of disparate treatment discrimination, the plaintiff must show that the protected trait, race, actually played a role or influenced the employer's decision toward the plaintiff. *Reeves v. Sanderson Plumbing Products. Inc.*, 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

The plaintiff may prove discrimination directly by showing that the defendant had a discriminatory motive in carrying out its employment decision. "Such evidence would take the form, for example, of an employer telling an employee, 'I fired you because you are [African–American].' " *See Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir.1998). In addition, because there will rarely be a situation when direct evidence of discrimination is readily available and "there will seldom be [an] 'eyewit-

ness' ... to the employer's mental processes," plaintiffs claiming [disparate treatment] discrimination may, alternatively, establish their cases through inferential and circumstantial proof as established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (quoting *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)).

Under the indirect evidence method, the plaintiff must show that (i) he belongs to a class protected under Title VII; (ii) he was qualified for the position he held prior to discharge; (iii) he suffered some type of adverse employment action and (iv) he was replaced by an individual not within the protected class. *Id.* at 802, 103 S.Ct. 1478. When the plaintiff lacks the fourth element of the *McDonnell Douglas* prima facie criteria, a plaintiff can also make out a *prima facie* case by showing, in addition to the first three elements, that "a comparable non-protected person was treated better." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992).

Once these elements are proven, "[t]he burden then ... shift[s] to the [defendant] to articulate some legitimate, non discriminatory reason for the [plaintiff's] rejection." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. "The defendant must clearly set forth, through the introduction of admissible evidence," reasons for its actions. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). "The defendant need not persuade the [trier of fact] that it was actually motivated by the proffered reasons[,]" 450 U.S. at 254, 101 S.Ct. 1089, but "only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discrimina-

tory animus." *Id.* at 257, 101 S.Ct. 1089. The defendant's burden is, thus, one of production; not persuasion. *See id.* at 254–55, 101 S.Ct. 1089. Although the burden of production shifts to the defendant, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (quoting *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089).

The plaintiff must then be given the full and fair opportunity to demonstrate that the employer's proffered reason was a pretext for discrimination. *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089. This burden now merges with the ultimate burden of persuading the Court that the plaintiff has been a victim of intentional discrimination. *Id.* "Especially relevant to such a showing would be evidence that [non-protected] employees involved in acts ... of comparable seriousness ... were nevertheless retained ...." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 282, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). An employer's termination of an employee for conduct that would otherwise warrant termination can be actionable, if the employer's sanctions are applied in a discriminatory manner. *Id.* at 283, 96 S.Ct. 2574.

Pretext is a "direct attack [ ] on the credibility of the employer's proffered" reason "and if shown raises 'a suspicion of mendacity.'" *Manzer v. Diamond Sham-rock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994) (quoting *Hicks*, 509 U.S. at 511, 113 S.Ct. 2742). A plaintiff may show pretext by producing evidence that the legitimate reason given by his employer had no basis in fact, did not actually motivate the adverse employment decision or was insufficient to motivate the adverse employment decision. 29 F.3d at 1082.

Here, Montgomery contends that HAM discriminated against him on the basis of his race in four respects: (1) his promotion to the position of Team Leader was delayed; (2) he was denied the opportunity to rotate into a production process that he preferred; (3) he was denied his request to be assigned to the New Model Group; and (4) he was denied the opportunity to work certain types of overtime.

### 1. Delayed Promotion

■ Montgomery contends that HAM discriminated against him based upon his race by delaying his promotion to the position of Team Leader. To be promoted to the position of Team Leader, a production associate employed in HAM's weld department must have been employed within the department for a period of at least 12 months and have taken the departmental weld test. Here, it is undisputed that Montgomery took the weld test administered in April 1997,[2] and was subsequently promoted to the position of Team Leader effective July 11, 1997. Montgomery was ineligible for promotion until April 1997,

---

**2.** Montgomery testified that he did not take the May 1996 weld test because he did not find out about it or get study materials until the day before the test. He contends that the White production associates were given study materials earlier. Montgomery concedes that he had not been in the weld department for the requisite 12 months prior to this test. Therefore, even if Montgomery had taken the May 1996 Test, he would not have been eligible for promotion at that time.

Montgomery contends that he did not take the August 1996 weld test because he mistakenly believed that associates had to be employed by the weld department for twenty-four months, rather than twelve months, prior to taking the test. There is no evidence in the record that HAM misinformed Montgomery or caused him to misunderstand the promotion eligibility requirements.

after he completed the weld test. Additionally, Montgomery was among the first group of production associates to be promoted following the April 1997 test. Therefore, we agree with the district court that Montgomery has not presented evidence sufficient to raise a genuine issue of material fact that he was qualified for a promotion before he received it in July 1997.

As noted, Montgomery has only named three White individuals as having less experience than him but being promoted before him. We conclude that these three individuals are not similarly situated to Montgomery in that these associates started at or before the time that Montgomery began his employment with HAM, and took the weld test administered in August 1996. Consequently, these individuals were eligible for promotion well before Montgomery, as they had been employed in the weld department for over twelve months and took the required weld test nearly a year before Montgomery. Montgomery failed to name a single White production associate who was hired after him but promoted before him. We agree with the district court that Montgomery has failed to present evidence sufficient to raise a genuine issue of material fact to establish that he was treated different that similarly situated White production associates. We affirm the district court's grant of summary judgment as to Montgomery's delay in promotion theory of race discrimination.

### 2. Denial of Opportunity to Rotate to Operator Process

Here, Montgomery contends that the "district court erred when it ruled the plaintiff failed to prove that race discrimination which caused him to suffer an adverse employment action" and that a genuine issue of fact remains as to whether Montgomery was qualified for the operator position. Contrary to Montgomery's assertions, however, the district court concluded that there were genuine issues of fact as to whether the terms and conditions of Plaintiff's employment were adversely impacted by the denial of his request to be rotated into the operator process, and as to whether he was qualified for the operator process. Therefore, the district court denied HAM's motion for summary judgment as to this claim, which was the sole remaining claim for trial. HAM contends that this claim is unreviewable because it "consists of nothing more than a reiteration of a claim that [Montgomery] voluntarily dismissed with prejudice." We agree. In *Warfield v. AlliedSignal TBS Holdings, Inc.*, 267 F.3d 538, 542 (6th Cir.2001), we held that "[a] voluntary dismissal with prejudice operates as a final adjudication on the merits and has a res judicata effect." We also stated: "If [the plaintiff's] dismissal of [the defendant] with prejudice was indeed voluntary, then the dismissal is final under Rule 41(a)(1)(i) and the case is over." *Id.See also Smoot v. Fox*, 340 F.2d 301, 302 (6th Cir.1964) ("Dismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties.")

Prior to the trial, Montgomery made an oral motion to withdraw *with prejudice* his remaining claim that as a result of race discrimination, HAM denied him the opportunity to work overtime as an operator when the East Liberty Plant was shut down for the Christmas and Fourth of July holidays. The district court sustained the Plaintiff's motion to dismiss this claim, and directed the entry of a final judgment in favor of HAM and against Montgomery. *Id.* At oral argument, Montgomery affirmed that he had voluntarily dismissed

this claim prior to the trial. Accordingly, we do not review Montgomery's claim that he was denied the opportunity to rotate into the operator process.

### 3. Denial of Assignment to New Model Group

Montgomery contends that HAM discriminated against him on the basis of race by denying his assignment to the New Model Group. Since February 1998, however, no team leaders or production staff associates in HAM's weld department of any race have been assigned to the New Model Group from other areas of the department. Ryland Eades, Senior Staff Engineer in HAM's weld department, explained in his affidavit that HAM based its decision to hire outside individuals to fill the New Model Group positions on HAM's concern that the loss of Team Leaders would be detrimental to the other areas of the weld department.

██ We conclude that HAM has met its burden of providing a non-discriminatory reason for denying Montgomery's assignment to the New Model Group. We agree with the district court that Montgomery has not presented evidence sufficient to raise a genuine issue of material fact on this issue. Further, Montgomery has not "argued that the Defendant's decision to refuse to allow any Team Leader in the Weld Department to transfer to the [New Model Group] was a pretext for discrimination against him." Accordingly, we affirm the district court's grant of summary judgment on Montgomery's claim that HAM discriminated against him by not promoting him to the New Model Group.

### 4. Denial of Certain Types of Overtime

Montgomery contends he was denied certain types of overtime on the basis of his race, including December and July holiday shutdown, weekend, post-shift mainte-

nance, and post-shift "new group" overtime. HAM, however, introduced evidence indicating that Montgomery worked a total of 764.8 hours of overtime from June 19, 1995 to July 11, 1997. During this time period, Montgomery worked holiday overtime during the December shutdown of the plant, including 8 hours on December 26, 1995; 5.25 hours on December 31, 1995; and 5 hours on January 1, 1996. Montgomery worked 51 different weekend days, for a total of 365.15 hours of weekend overtime during this time period. Montgomery also worked post-shift preventative maintenance overtime on 50 occasions for a total of 114.9 hours, and worked "new model" overtime on 8 separate occasions for a total of 42.5 hours. Montgomery has not produced evidence sufficient to raise a genuine issue of material fact as to whether he was denied overtime opportunities, or whether similarly situated White associates were given overtime opportunities that Montgomery was denied. Consequently, we affirm the district court's grant of summary judgment in favor of HAM on Montgomery's claim that HAM engaged in racial discrimination by denying him certain types of overtime.

## III.  CONCLUSION

For these reasons, we AFFIRM the district court's judgment.