Samuel J. BROSKA, Plaintiff–Appellant,

v.

William J. HENDERSON et al., Defendants–Appellees.

No. 01–4013.

United States Court of Appeals, Sixth Circuit.

June 30, 2003.

under the policy directive that Elo had any responsibility for the medical decisions or policies at issue in this case.

Before MOORE and GIBBONS, Circuit Judges; and COHN,* District Judge.

* The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

## OPINION

MOORE, Circuit Judge.

The plaintiff, James Broska, appeals the district court's grant of summary judgment against him. In his complaint, Broska alleged that the defendants, Cynthia Turner, Gwen Campbell, and their employer, the Postmaster General, retaliated against him for complaining about their acts of racial discrimination, thereby violating the Title VII retaliation provision and Ohio law prohibiting the intentional infliction of emotional distress. At issue on this appeal is whether the district court erred in granting summary judgment to the defendants on Broska's Title VII retaliation claim. For the reasons that follow, we AFFIRM the district court's judgment.

## I. BACKGROUND

James Broska, a white male, began working as a letter carrier for the United States Postal Service in August of 1986. He is currently still employed there. In October of 1995, Cynthia Turner, a black female, became his supervisor. In May of 1996, Broska filed a charge of discrimination with the EEOC alleging that Turner discriminated against him because of his race. This charge was resolved on January 7, 1997, when the parties agreed to settle the matter by having the government remove an earlier warning letter from Broska's file and by having Broska continue working under Turner as before.

Broska alleges that Turner then retaliated against him for filing the complaint. First, according to Broska, Turner did not promptly remove the warning letter from his file as required by the parties' settlement. Second, she deliberately delayed giving him a cash advance of $86. Third,

while Turner allowed other employees to take their lunch and other breaks together, she wrote Broska a written reprimand for so doing. In response to these retaliatory acts, Broska filed an EEO complaint of discrimination on February 27, 1998.

The filing of this EEO complaint allegedly sparked a second wave of retaliatory harassment. Broska claims that Turner and Campbell (who had joined the post office in September 1997 as a supervisor) began supervising his work far more intensely and critically than they supervised the work of other employees. Broska claims that they stood directly behind him while he was sorting mail and followed him on his route far more often than they did for other letter carriers.

The defendants deny that Turner and Campbell retaliated against Broska. They argue that Turner did not know to destroy the warning letter because she was never told about the resolution of Broska's initial complaint. The defendants point out that Turner destroyed the letter as soon as Broska brought it to her attention. The defendants claim that the delay in the $86 cash advance was not retaliatory, but merely due to the fact that Turner did not have the necessary forms. As for Broska's claim that the defendants retaliated against him by writing him a reprimand for combining his breaks, the defendants claim (and Broska admits) that the employees had been repeatedly warned as a group that lunch breaks could not be combined with other breaks. Lastly, the defendants deny that Broska was supervised more harshly than other employees. They point out that it was Turner's and Campbell's job to supervise employees and that they stood on the floor where they could see many clerks and carriers. The defendants also note that Campbell and Turner stood five feet behind Broska, preventing

him from always being able to tell where their attention was directed.

Broska's chief evidence in this case is his own affidavit. This affidavit states that Turner and Campbell overly scrutinized and criticized his work, and that they diminished his work responsibilities, apparently decreasing the amount of overtime he could earn. It also claims that Broska had not violated the post office rule forbidding amalgamation of breaks. Broska's affidavit does not mention Turner's delay of the cash advance or her failure to destroy the earlier warning letter in his affidavit. These allegations appear only in Broska's complaint and motion opposing summary judgment.

Broska also relies on the affidavits of six other mail carriers. These affidavits all claim that Broska's work was scrutinized more than that of the other workers and that Turner and Campbell would stand behind Broska and focus their attention on him. Two of these carriers stated that Broska was verbally criticized more than the other carriers. As a result of this retaliation, Broska claims to have suffered substantial emotional harm and monetary damages in the form of prescription expenses, lost overtime, and lost sick and vacation time.

Broska filed suit in the United States District Court for the Northern District of Ohio on July 28, 1999, claiming that his supervisors had retaliated against him in violation of Title VII and including a state-law claim for the intentional infliction of emotional distress. The defendants moved for summary judgment. The district court granted their motion in two orders, one dated December 27, 2000, and the other dated July 25, 2001. In the December 2000 order, the district court took two actions. First, it dismissed Broska's state-law damage claim. Broska had originally sued Turner and Campbell as individuals, but the United States had certified that

they were acting in the scope of their employment and so was substituted as a defendant in their place. Since the United States was presumptively cloaked with its inherent sovereign immunity, Broska could therefore not recover a money judgment under the state-law claim unless the United States waived that immunity. As a jurisdictional prerequisite to the waiver of immunity, however, the Westfall Act requires that Broska initially present his claim to the Postal Service for redress. *See* 28 U.S.C. § 2675(a). Since there was no presentment of this claim to the Postal Service, the district court held that it did not have jurisdiction to hear the damage aspect of the state-law claim. The district court then addressed Broska's Title VII retaliation claim and found that Broska had not put forth evidence of an adverse action. The district court therefore granted the defendants summary judgment on that claim.

Later, in the July 2001 order, the district court disposed of the remaining issues in the case by dismissing the injunctive part of Broska's state-law claim; the parties evidently agreed that a federal court could not issue an injunction ordering federal officials to comply with state law.

On appeal, Broska only challenges the district court's grant of summary judgment on the Title VII claim. Broska does not challenge the parts of the district court's orders involving the state-law claim. The only point of contention between the parties here is whether Broska has made a sufficient showing in order to avoid summary judgment on his Title VII retaliation claim, and, within that issue, whether Broska has shown acts significant enough to constitute retaliation.

## II. ANALYSIS

### A. Jurisdiction

The district court below had jurisdiction over the plaintiff's claim pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e. This court has jurisdiction under 28 U.S.C. § 1291.

### B. Standards of Review

We review de novo a district court's order granting summary judgment. *New Par v. City of Saginaw*, 301 F.3d 390, 393 (6th Cir.2002). This court can only affirm a grant of summary judgment if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute over a material fact cannot be "genuine" unless a reasonable jury could return a verdict for the nonmoving party; a mere scintilla of evidence supporting the plaintiff's claim is insufficient. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### C. The Retaliation Claim

In order to establish a prima facie case of Title VII retaliation in our circuit, a plaintiff must make a showing of four elements:

(1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir.2000) (emphases removed). We have stressed that "at the prima facie stage the [plaintiff's] burden is minimal," and that "[t]he amount of evi-

dence in the prima facie context is not the same amount necessary to win a judgment." *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir.1997) (emphases removed).

At issue here is the third element of the *Morris* test, the existence of an adverse employment action or severe or pervasive retaliatory harassment.[1] Broska claims that he has alleged facts sufficient to show both that he suffered an adverse employment action and that he endured severe or pervasive harassment by his supervisors. We address each claim in turn.[2]

### 1. Adverse Employment Action

"An adverse employment action is a 'materially adverse change in the terms or

---

1. The district court did not consider whether Broska could show severe or pervasive retaliatory harassment by a supervisor, focusing only on whether there was an adverse employment action in the case. We believe that Broska did adequately (if somewhat inartfully) raise the claim of retaliatory harassment in the trial court. In his complaint, for example, Broska states that he was a victim of "a pattern and practice of further retaliation, harassment and intimidation." Joint Appendix ("J.A.") at 10 (Compl.¶ 15). In his affidavit, he argues that the defendants engaged in "an intense campaign of harassment and intimidation under the guise of supervision." J.A. at 42 (Broska Aff. ¶ 13). In his memorandum opposing summary judgment, he describes the defendants' intense supervision and monitoring of him as constituting "repeated harassment." J.A. at 32 (Mem. in Opp. to Summ. J.). After reviewing the material Broska submitted in the trial court, we hold that his claim of severe or pervasive harassment was properly raised there.

The district court, therefore, did not apply the correct legal standard to Broska's claims. By considering only whether Broska had alleged an adverse employment action, the district court was applying the former retaliation standard of *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064 (6th Cir.), *cert. denied*, 498 U.S. 984, 111 S.Ct. 516, 112 L.Ed.2d 528 (1990), to this case, which was decided after this court's modification of that standard in *Morris*. *Morris* unmistakably states that a plaintiff can succeed in a Title VII retaliation suit by showing *either* an adverse employment action *or* severe or pervasive harassment by a supervisor.

Judge Gibbons, in her concurrence, argues that Broska did not raise the harassment issue properly. Of course, she acknowledges that Broska repeatedly "uses the word 'harassment'" in describing the retaliatory acts that constitute the basis of his claim. Concurring Op. at 1. Yet, she argues that Broska should be deemed not to have raised a Title VII retaliation claim based on harassment because he did not explain how *Morris* changed retaliation law to permit a Title VII retaliation claim based solely on harassment (without an adverse employment action). It is the role of the district court (not the parties) to apply the law properly. As it was clear both that the Title VII retaliation provision made supervisory harassment actionable and that Broska alleged supervisory harassment in his Title VII retaliation claim, we hold that Broska did properly raise the harassment claim in the district court.

Despite the fact that the district court did not apply the appropriate legal standard, we do not feel that a remand is necessary. Both parties have briefed this issue, and the facts and governing law of this case are relatively clear. We therefore believe that a remand would entail a needless waste of judicial resources. *See Fair Hous. Advocates Ass'n v. City of Richmond Heights*, 209 F.3d 626, 635–36 (6th Cir.2000) (holding that, although the trial court imposed the burden of proof on the incorrect party, there was "ample evidence presented in the record" that resolved the legal questions in the case, "thereby rendering a remand unnecessary").

2. In his reply brief, Broska claims that the harassment he suffered amounted to constructive discharge and was therefore an adverse employment action. Broska cannot show constructive discharge, however, because he still works for the Post Office. *See Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir.1999) ("To constitute a constructive discharge, the employer must deliberately create intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit *and the employee must actually quit*.") (emphasis added).

conditions of ... employment because of [the] employer's conduct.'" *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir.2002) (citation omitted). "'A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 553 (6th Cir.2002) (citation omitted); *see also Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996). "A change in employment conditions 'must be more disruptive than a mere inconvenience or an alteration of job responsibilities,'" *Kocsis*, 97 F.3d at 886 (citation omitted), and so we have held that de minimis employment actions, such as "[r]eassignments without changes in salary, benefits, title, or work hours usually do not constitute adverse employment actions," *Policastro*, 297 F.3d at 539.

Broska's allegations of an adverse employment action are of two sorts. In his complaint, Broska lists four claims of retaliation that he says constitute an adverse employment action: his supervisors failed promptly to remove a performance letter from his file, failed to give him a timely cash advance, gave him a warning letter about his use of break time, and singled him out for intense supervision and criticism. In his motion for summary judgment, Broska adds an additional argument; he there states that Turner and Campbell changed his work duties thereby lowering the amount of overtime he could work.

■ The allegations in Broska's complaint *do not constitute an adverse employment action.* They do not satisfy any of the criteria this court outlined in *Kocsis;* Broska has not been terminated or demoted, or had his pay rate reduced, benefits lessened, or responsibilities diminished. This court has held that job changes that do not change one's salary, benefits, title, or work hours usually do not constitute adverse employment actions, even if one's job becomes significantly more difficult. *See Policastro*, 297 F.3d at 539 (holding that a sales representative who was reassigned to cover territory 80 to 100 miles from her home could not make out an adverse employment action); *Kocsis*, 97 F.3d at 885 (holding that a nurse's reassignment to a more physically demanding job was not an adverse employment action). Here, the plaintiff does not even have a change in duties–the increase in supervision that Broska alleges is a de minimis action that is simply not materially adverse. *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir.2000) (giving examples of de minimis employment actions that do not, as a matter of law, constitute adverse employment actions).

Perhaps recognizing that we might find these claims lacking, Broska has, on appeal, raised only the reduction in overtime as an adverse employment action. The government urges us not to consider this claim as it was not included in Broska's complaint. This claim, however, was mentioned in Broska's memorandum opposing summary judgment. Though he gives it somewhat cursory treatment, we find it properly raised and will address it on the merits. *See Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 345 (6th Cir.2001) (holding that a claim that was not in the plaintiff's complaint but was raised in the plaintiff's motion opposing summary judgment was properly presented and therefore must be reviewed).

We agree with Broska that the denial of overtime can constitute an adverse employment action. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762, 118 S.Ct.

2257, 141 L.Ed.2d 633 (1998) (associating "tangible employment action[s]" with "direct economic harm"). Some courts have already so held. *See Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1118 (11th Cir.2001) (holding that the denials of overtime pay and other discretionary pay "deprived Bass of compensation which he otherwise would have earned [and therefore constituted] adverse employment actions for purposes of Title VII"); *see also Sinopoli v. Regula*, No. 97–7229, 1997 WL 624987, at *3 (2d Cir. Oct.9, 1997) (stating that a "reduction in overtime could constitute [an] adverse employment action" although "it does not in this case"). This circuit, in an unpublished opinion, has intimated a similar view. In *Montgomery v. Honda of Am. Mfg., Inc.*, 47 Fed. Appx. 342, 2002 WL 31119689 (6th Cir. Sept.24, 2002), this court considered whether a denial of overtime could be an adverse employment action in a Title VII case. Montgomery, a black worker, contended that Honda had discriminated against him in several ways, including denying him overtime. After dismissing his other contentions, we addressed his overtime argument. We considered the denial of overtime to qualify conceptually as an adverse employment action, but we ultimately concluded that "Montgomery has not produced evidence sufficient to raise a genuine issue of material fact as to whether he was denied overtime opportunities, or whether similarly situated White associates were given overtime opportunities that Montgomery was denied." *Id.* at 349.

While we again stress that allegations of a denial of overtime, properly supported, could constitute an adverse employment action, Broska has put forth virtually no evidence on the overtime issue. In fact, we find this case to be very similar to *Montgomery* in that regard. Like the plaintiff in *Montgomery*, Broska has not presented evidence showing that he has been denied overtime opportunities that others have received. Broska has not even stated how much overtime he lost due to the retaliation. The only evidence that Broska has adduced is his own terse statement in his affidavit that the Post Office diminished "my work responsibilities in the sorting of my business mail," which caused him to lose overtime "in excess of $16,000." J.A. at 42, 44 (Aff. of Samuel Broska). We find this insufficient to withstand the defendants' motion for summary judgment.

### 2. Severe or Pervasive Retaliatory Harassment

Broska has an alternative to showing an adverse employment action, however. Broska can make out a prima facie case in the absence of an adverse employment action by showing that he "was subjected to severe or pervasive retaliatory harassment by a supervisor." *Morris*, 201 F.3d at 792.

This alternative route first arose in the Title VII sexual harassment context. *See Meritor Sav. Bank, FSB, v. Vinson*, 477 U.S. 57, 67–68, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (holding that a hostile work environment can be actionable under the Title VII sexual harassment provision even if there was no adverse employment action). In two later cases, the Supreme Court addressed the extent to which an employer is vicariously liable for the sexually harassing actions of its supervising employees. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

In *Morris*, we applied these cases to the Title VII retaliation context. Analyzing the statutory language, we unified the meanings of the word "discrimination" that appear in both 42 U.S.C. § 2000e–2(a)(1)

(the Title VII sexual and racial discrimination subsection) and 42 U.S.C. § 2000e–3(a) (the Title VII retaliatory discrimination subsection). *See Morris,* 201 F.3d at 791–92. Since the Supreme Court in *Ellerth* and *Faragher* found it proper to base Title VII relief on severe or pervasive supervisory harassment in the sexual harassment context, in *Morris* we found it similarly proper to allow plaintiffs to proceed on a retaliation claim by showing severe or pervasive retaliatory harassment. As a result, the standard for actionable harassment is the same in the retaliation context as in the sexual and racial discrimination contexts.

Pursuant to this standard, the harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citation omitted). This test has both an objective and a subjective component: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as hostile or abusive. *Id.* at 21–22, 114 S.Ct. 367. In determining whether the conduct is severe or pervasive enough to constitute a hostile work environment, this court must consider the totality of the circumstances an employee faces, including "the frequency of the … conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23, 114 S.Ct. 367. In considering the totality of the circumstances, we are not to disaggregate the various retaliatory incidents that the plaintiff claims; this would inappropriately rob them of their cumulative effect. *See*

*Williams v. Gen. Motors Corp.,* 187 F.3d 553, 562 (6th Cir.1999).

There are a number of cases that give content to our "severe or pervasive harassment" standard. In *Morris,* the plaintiff, Judy Morris, had filed a complaint against her supervisor, Brent Likins, for sexual harassment. *See Morris,* 201 F.3d at 787. In retaliation, Likins began calling Morris and visiting her workplace to harass her. He drove to her building on several occasions and sat in his truck looking in her work window, "making faces at her." *Id.* at 793. He once followed her home from work, drove up to her mailbox, and gave her "the finger." *Id.* He destroyed the television Morris watched at work, and threw roofing nails on her home driveway several times. In light of those facts, we held that "a reasonable juror could conclude that Likins's behavior after the lodging of Morris's complaint constituted severe or pervasive retaliatory harassment." *Id.*

We must, however, distinguish between cognizable harassment and mere annoyance, as Title VII was not meant to become a "'general civility code.'" *Williams,* 187 F.3d at 564 (citing *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). We have repeatedly stated that minor irritations do not amount to severe or pervasive harassment. *See, e.g., Lindsay v. Pizza Hut of Am.,* 57 Fed.Appx. 648, 650, 2003 WL 244826, at *3 (6th Cir. Jan.29, 2003) (holding that a plaintiff could not show severe or pervasive harassment by demonstrating that "a supervisor rolled her eyes at [the plaintiff], allowed another employee to 'curse' him, and offered to wager $50 that [he] would never be a manager"); *Willey v. Slater,* 20 Fed. Appx. 404, 406, 2001 WL 1176419, at *3 (6th Cir. Sept.25, 2001) (holding that an employee could not make out severe or pervasive

harassment when his supervisors simply treated him coldly or with hostility but without some inflammatory incident); *Downs v. Postmaster Gen.*, 31 Fed. Appx. 848, 851, 2002 WL 373719, at *2 (6th Cir. Mar.7, 2002) (finding it not severe or pervasive that "a supervisor followed, stared at or stalked [the plaintiff] on one occasion"), *cert. denied*, 537 U.S. 882, 123 S.Ct. 103, 154 L.Ed.2d 139 (2002).

■ Reflecting on these cases, we believe that Broska's allegations can only be conceptualized as claims of minor annoyance, not severe or pervasive harassment. Broska's chief claim is that his supervisors continually monitored him and subjected his work to criticism. Broska does not allege that his supervisors physically intimidated him or subjected him to verbal abuse. Broska does not claim that he was bothered away from work (like the plaintiff in *Morris* ) or on his breaks. Moreover, Broska does not deny that it was the job of his supervisors to physically inspect his manual work. On these facts, we cannot conclude that Broska's allegations are sufficient to support a claim of retaliation here. Taking all factual disputes in Broska's favor, an objective person simply would not find this environment so hostile and abusive that it effectively " 'alter[ed] the conditions of [his] employment and [constituted] an abusive working environment.' " *Harris*, 510 U.S. at 21, 114 S.Ct. 367 (citation omitted).[3] His allegations of severe or pervasive harassment all fail, and with them his Title VII retaliation claim does as well.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

**JULIA SMITH GIBBONS, Circuit Judge, concurring.**

**GIBBONS, Circuit Judge.**

I concur in the result in this case, but I write separately to point out my disagreement with my fellow panelists' conclusions concerning which issues were raised in the

---

**3.** Broska points to cases like *Allen v. Michigan Dep't of Corr.*, 165 F.3d 405 (6th Cir. 1999), and *Moore*, 171 F.3d at 1073, to support his claim, pointing out that we found severe and pervasive harassment in situations involving supervisors who overly monitored and criticized their employees. Broska distorts these cases, however, as they both involve far more than mere monitoring and criticism. In *Allen*, the plaintiff (like Broska) was "constantly observed and followed" by his supervisors and they "monitored his work more closely than that of white officers." *Allen*, 165 F.3d at 411. The plaintiff in *Allen*, however, also "was subjected to racial epithets and insults by supervisory personnel[,] ... received a threatening note signed by the 'KKK,' " had his lock cut off his locker, and found his log book with altered notations. *Id.* at 410. A fair reading of *Allen* does not support Broska's claim that monitoring and verbal work-related criticism in itself amounts to severe or pervasive harassment. Similarly, in *Moore*, an African–American friction welder Gerald Moore had filed a racial discrimination complaint with the EEOC after several episodes of race-related harassment. In response, Moore's supervisor stopped talking to him and moved other employees from the back of the shop away from Moore, so that they too would not talk to him. The company's janitor was told not to clean Moore's area. *Moore*, 171 F.3d at 1079. Eventually, Moore was left "as the only employee in that department." *Id.* at 1078. In addition, Moore was subjected to "more frequent disciplinary writeups ... for trivial matters and unwarranted criticism [of his] work." *Id.* at 1080. Though *Moore* is superficially similar to this case, the supervisor in *Moore* not only harassed the plaintiff, but subjected him to unjustified disciplinary proceedings and had him ostracized by all other working personnel. Ultimately, these cases do not support Broska's contention that the harassment he suffered was severe or pervasive. The facts that Broska alleges are simply not nearly as egregious as those present there.

district court and are properly before us on appeal.

With regard to Broska's claim of severe or pervasive retaliatory harassment, I cannot agree that the district court applied an incorrect legal standard or erred in any way in its grant of summary judgment to defendants. My reading of the record is that Broska never raised a claim of severe or pervasive harassment in the district court.

My interpretation of the record rests on two facts. First, while the recitation of facts in Broska's complaint uses the word "harassment," Broska fails mention harassment in the part of his complaint stating his theory of recovery. The only theory of recovery alleged is retaliation based on an adverse employment action; nowhere in his complaint does Broska allege that he seeks recovery for severe or pervasive harassment. Second, in the briefing on the summary judgment motion in the district court, neither party addressed whether Broska had produced sufficient evidence of retaliatory harassment to survive summary judgment. Specifically, Broska does not mention severe or pervasive harassment as a theory of recovery in his memorandum opposing defendants' motion for summary judgment. Given this record, it is hardly surprising that the district court opinion does not address retaliatory harassment. The simple use of the word "harassment" is insufficient to place a district court on notice that a plaintiff is claiming he was subjected to severe or pervasive retaliatory harassment. The district court is not required to address theories of recovery not asserted by a plaintiff.

Contrary to the statement in footnote one of Judge Moore's opinion, my point is not that Broska was under an obligation to explain *Morris*. He was, however, required to identify his theories of recovery.

If Broska wished to seek recovery for severe or pervasive retaliatory harassment, he should have sought permission to amend his complaint to assert such a claim, or, at a minimum, he should have alerted the district court through his summary judgment briefing that he was relying on a theory of severe or pervasive harassment to establish his claim of retaliation. Had the theory of severe or retaliatory harassment been asserted, then the district court's obligation would have been to apply the appropriate legal standard, even if Broska did not cite *Morris*.

I am mindful that defendants do not argue on appeal that Broska failed to raise the retaliatory harassment issue in the district court. Moreover, I agree with the lead opinion that Broska has not presented evidence of severe or pervasive retaliatory harassment. I cannot, however, characterize the district court's ruling as error, as do both of my colleagues.

I disagree also with Judge Moore's conclusion that Broska properly raised a claim that denial of overtime pay was an adverse employment action. No such claim is mentioned in Broska's complaint. Overtime is mentioned very briefly in Broska's memorandum opposing summary judgment and in his affidavit. My reading of these cursory references indicates that the lost overtime pay is argued to be an element of relief, not an adverse employment action on which liability can be based.

Although I disagree that an issue of denial of overtime pay as an adverse employment action is properly before us, I do not disagree with the conclusions that denial of overtime pay can constitute an adverse employment action and that Broska has presented insufficient evidence with respect to any alleged denial to create a fact issue.

This case presents a situation in which an appellant seeks on appeal to recharacterize the claims he presented in the district court. Our obligation, however, is to resist such recharacterization and decide the issues raised in the district court. *See In re Hood,* 319 F.3d 755, 760 (6th Cir. 2003) ("It is well-settled that this court will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice." (quotations omitted)); *Paccar Inc. v. TeleScan Technologies, L.L.C.,* 319 F.3d 243, 258 (6th Cir.2003) ("Arguments that were not raised below may not be asserted on appeal."); *White v. Anchor Motor Freight, Inc.,* 899 F.2d 555, 559 (6th Cir.1990) ("This court will not decide issues or claims not litigated before the district court.").

AVERN COHN, Senior District Judge, dissenting.

COHN, Senior District Judge.

The lead opinion acknowledges that the district court applied an incorrect legal standard but does not feel a remand is necessary.[1] I respectfully disagree. It is not up to an appellate court to assess the quality of the evidence under the correct legal standard in the first instance, as the lead opinion does here. Moreover, in finding that Broska failed to make out a prima facie case for retaliation based on a theory of retaliatory harassment, the lead opinion concludes that Broska's "allegations can only be conceptualized as claims of minor annoyance, not severe or pervasive harassment." However, not noticed by the lead opinion is the evidence Broska submitted—his affidavit as well as the affidavits of several co-workers who nearly uniformly state that Broska was subjected to intensive supervision unlike any other carri-er, that the level of supervision did not take place in Broska's absence, and that the intensive supervision ceased about the time Broska filed suit. Whether or not this evidence is sufficient to support a claim of retaliation based on a theory of retaliatory harassment is a matter for the district court to address in the first instance under the correct legal standard, and therefore, in my view, a remand is necessary.

---

1. Unlike the concurring opinion, I agree with the lead opinion's finding that Broska raised a claim of severe or pervasive retaliatory harassment.