Keetha BARNES, Plaintiff,

v.

**UNITED PARCEL SERVICE,**
Defendants.

No. 03–2881 M1/P.

United States District Court,
W.D. Tennessee,
Western Division.

Feb. 16, 2005.

Sheila L. Robinson–Beasley, Robinson–Beasley Law Firm, Memphis, TN, for Plaintiff.

Jason Fisher, Waller Lansden Dortch & Davis, Waverly D. Crenshaw, Waller Lansden Dortch & Davis, Charley H. Williamson, Waller Lansden Dortch & Davis, Nashville, TN, for Defendants.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ORDER DENYING DEFENDANT'S MOTION TO STRIKE AS MOOT**

MCCALLA, District Judge.

Before the Court is Defendant's Motion for Summary Judgment, filed November 12, 2004. Plaintiff filed an Opposition to Defendant's Motion for Summary Judgment on December 13, 2004.

Also before the Court is Defendant's Motion to Strike Portions of, and Materials Submitted With, Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, filed December 27, 2004. Plaintiff responded in opposition on January 11, 2004.

For the following reasons, Defendant's motion for summary judgment is GRANTED. Defendant's motion to strike is DENIED as moot.

## I. BACKGROUND

The instant case arises out of Plaintiff's termination by his employer, Defendant United Postal Service ("UPS"), for falsification of documents. Plaintiff was employed by Defendant as a feeder driver[1] for approximately twenty-one years until he was terminated on June 24, 2002.[2] The terms and conditions of Plaintiff's employment were governed by the Collective Bargaining Agreement ("CBA") between Plaintiff's union, the International Brotherhood of Teamsters Local 667, and Defendant. Plaintiff is required by the CBA and federal law to pass a Department of Transportation ("DOT") physical every two years and possess a valid DOT card that indicates the date of his last DOT physical.

On May 19, 1999, Plaintiff visited Dr. Lloyd Robinson at OccuMed, an approved DOT physician, for a DOT physical. According to Plaintiff, Dr. Robinson issued him a DOT card but left the expiration date blank.[3] At the time of the May 19, 1999, physical, Plaintiff was aware that a DOT card can be valid for no more than

1. "Feeder driver" appears to be UPS's term for drivers of its tractor-trailers.

2. Plaintiff was reinstated to his position by an arbitrator's ruling approximately one year after his termination.

3. The May 19, 1999, DOT physical was approximately Plaintiff's eighth DOT physical. Plaintiff contends that DOT doctors routinely leave the dates on DOT cards blank, that employees routinely fill in those dates, and that UPS management and/or supervisors had in the past altered or written on employees'

two years. Approximately a week after the physical, Plaintiff filled in the expiration date himself. Plaintiff admits that he filled in an incorrect date that was more than two years after his physical.[4] (Appendix to Defendant's Mot. for Summ. J., Ex. 1 (Barnes Dep.) at 396.)

On June 11, 2002, Feeder Manager Rodel Diggins instructed Feeder Supervisor Mary Patrice Forbes to conduct a supervisory ride with Plaintiff. On that ride, Ms. Forbes recorded the "DOT physical due date" from Plaintiff's DOT card, which was August 15, 2002.[5]

On June 12, 2002, Mr. Diggins mentioned to Ms. Forbes that Plaintiff needed to take a physical and get a new DOT card because UPS records indicated that Plaintiff's card was to expire on June 15, 2002. Ms. Forbes replied that Plaintiff did not need a new card for another two months.

When Plaintiff reported to work on June 12, 2002, Mr. Diggins asked Plaintiff for his DOT card. Mr. Diggins noted that the expiration date was August 15, 2002. After an investigation, UPS learned that Plaintiff's most recent DOT physical had been on May 19, 1999. UPS obtained a statement from Dr. Robinson, the physician who administered Plaintiff's physical, attesting to the fact that he did not fill in an expiration date on Plaintiff's DOT card.

UPS managers met with Plaintiff and his union representative at least twice and asked Plaintiff to explain why his DOT card had the August 15, 2002, expiration date.

Under Article 52 of the CBA, dishonesty is an offense warranting immediate termination. Mr. Dickson decided to terminate Plaintiff after, upon consultation with Mr. Diggins, Feeder Division Manager Tom Ragland and District Security Manager Fred Wojewodka, he concluded that Plaintiff had falsified his DOT card twice by initially filling in the wrong date and later altering the date on the card.[6]

According to Defendant, the conclusion that Plaintiff falsified his DOT card twice was based upon (1) the implausibility of Plaintiff's explanation for the incorrect date being on the card, given that he had completed several DOT physicals before; (2) the clear evidence that Plaintiff's card had been altered; and (3) Plaintiff's lack of an explanation for how the card was altered and why he did not contact the physician's office or UPS to confirm a correct date.

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the

---

DOT cards without their knowledge or permission.

**4.** Plaintiff, however, did not recall what date he entered on the card until the card was presented to him and contends that he was not aware that he incorrectly recorded the date on the card at the time he recorded the date.

**5.** On May 10, 2001, Rod Enochs, one of Plaintiff's supervisors, recorded the expiration date on Plaintiff's DOT card as June 15, 2002. When Ms. Forbes and Mr. Diggins viewed Plaintiff's card in June of 2002, however, the date read August 15, 2002. It is undisputed that the card appeared to be altered. Plain-

tiff's contends that the card had been out of his possession several times and that he did not know how it became altered.

**6.** Other employees who had either reported to work with expired DOT cards or driven with expired DOT cards received warning letters rather than termination. However, after investigation, Labor Relations Manager Walt Dickson and Mr. Diggins could not identify anyone else who had falsified a DOT card either by filling in an invalid expiration date or altering the card in some way. Mr. Dickson has discharged at least 18 other employees for falsification of documents since the beginning of 2002.

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548, and the nonmoving party is unable to make such a showing, summary judgment is appropriate, *Emmons v. McLaughlin,* 874 F.2d 351, 353 (6th Cir.1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Abeita v. TransAmerica Mailings, Inc.,* 159 F.3d 246, 250 (6th Cir.1998). A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

## III. Analysis

Plaintiff asserts claims of race discrimination, retaliatory harassment and racial harassment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq.. In particular, Plaintiff claims he was terminated due to his race and singled out for harassment by supervisory personnel due to his race and in retaliation for opposing activities protected under Title VII. Defendant has moved for summary judgment on all of Plaintiff's claims. The Court will address each of Plaintiff's claims in turn.[7]

### A. Race Discrimination

Race discrimination claims are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and refined in *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Under this approach, a plaintiff must first establish a *prima facie* case of discrimination. *Burdine,* 450 U.S. at 252, 101 S.Ct. 1089. Establishing a *prima facie* case creates a rebuttable presumption that the employer engaged in unlawful discrimination. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Once the plaintiff has established a *prima facie* case, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the adverse employment action. *Burdine,* 450 U.S. at 252–53, 101 S.Ct. 1089. The burden is not onerous. An employer will satisfy its burden as long as it articulates a

---

**7.** Defendant also asserts that Plaintiff's claims are barred due to judicial estoppel. However, because the Court grants Defendant's motion for summary judgment regarding all of Plaintiff's claims, the Court does not reach Defendant's judicial estoppel argument.

valid rationale for its decision. *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir.1996).

If the employer meets this burden, the plaintiff may still prevail if he shows that the reasons offered by the defendant are a pretext for discrimination. *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089. To prove pretext, the plaintiff must introduce admissible evidence to show "that the proffered reason was not the true reason for the employment decision" and that racial animus was the true motivation driving the employer's determination. *Hicks*, 509 U.S. at 508, 113 S.Ct. 2742. Throughout the analysis, the ultimate burden of proof remains with the plaintiff. *Id.* at 511, 113 S.Ct. 2742.

In this case, Plaintiff alleges that UPS terminated him because of his race.[8] For the purpose of its motion, UPS has assumed that Plaintiff has adduced sufficient evidence to establish his *prima facie* case. However, UPS has articulated a non-discriminatory reason for terminating Plaintiff. Specifically, UPS has set forth evidence showing that Plaintiff was terminated for falsifying his DOT card. Accordingly, Plaintiff can only prevail if he shows that UPS's proffered reason is pretext for discrimination.

■ To prove pretext, Plaintiff must show: (1) that the employer's reasons for his termination had no basis in fact; (2) that the employer's proffered reason did not actually motivate the decision; or (3) that the employer's reasons were insufficient to motivate the decision. *Manzer v. Diamond Shamrock*, 29 F.3d 1078, 1084 (6th Cir.1994). Plaintiff fails to meet this burden. It is undisputed that the relevant date on Plaintiff's DOT card was incorrect. Accordingly, Defendant's decision to terminate Plaintiff had a basis in fact. Moreover, Plaintiff has not shown that his falsification of the DOT card did not actually motivate or was insufficient to motivate Defendant's decision to terminate him.

■ Although Plaintiff denies that he falsified his DOT card, the honest belief rule favors UPS. As adopted by the Sixth Circuit, the honest belief rule provides that "as long as an employer has an *honest belief* in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Majewski v. Automatic Data Processing*, 274 F.3d 1106, 1117 (6th Cir.2001)(emphasis added) (citation omitted). "An employer has an honest belief in its reason for discharging an employee where the employer reasonably relied on the particularized facts that were before it at the time.the decision was made." *Id.* (citation omitted).

The record shows that UPS based its decision to terminate Plaintiff on the results of its internal investigation, a series of interviews with Plaintiff and other employees, and information from the physician who administered the DOT physical. Therefore, UPS's non-discriminatory reason appears to be predicated on an honest belief that Plaintiff falsified his DOT card. Accordingly, the Court finds that no genuine issues of material fact exist and therefore summary judgment is GRANTED regarding Plaintiff's claim for race discrimination.[9]

---

8. Plaintiff also contends that another employee, Wayne Tindle, was given vacation benefits to which he was not entitled, whereas Plaintiff was denied vacation benefits to which he was not entitled. However, it is undisputed that Mr. Tindle was required to pay back to the company all vacation benefits to which he was not entitled. Accordingly, no genuine issue of material fact exists for the Jury to consider regarding that claim.

9. Plaintiff also contends that the discipline he received was excessive, since no employee

## B. Retaliatory Harassment

■ Title VII prohibits employers from harassing employees because they engaged in an activity or activities protected by Title VII. In order to establish a prima facie case of retaliatory harassment, a plaintiff must prove that:

(1) [he] engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, *or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor;* and (4) there was a causal connection between the protected activity and the adverse employment action *or harassment.*

*Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 792 (6th Cir.2000) (citations omitted)(emphasis in original). "If and when a plaintiff has established a *prima facie* case of retaliatory harassment, the burden of production of evidence shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions." *Id.* (citations omitted). "The plaintiff, who bears the burden of persuasion throughout the entire process, then must demonstrate 'that the proffered reason was not the true reason for the employment decision.'" *Id.* (citations omitted).

■ Plaintiff contends that he was harassed by supervisory personnel because he often spoke up on behalf of other employees' grievances.[10] Specifically, Plain- tiff contends that he was told by supervisory personnel to leave the yard after his shift, he was intimidated and overly supervised, the start time of his drive was improperly changed, his delivery runs were cut, he was denied the opportunity to ask questions regarding his check, he received an improper warning letter from his supervisor, his supervisor pointed her finger in his face and yelled at him, he was denied the right to use the bathroom at work, and he was once pushed in the chest by his female supervisor.

Having reviewed the record and the parties' submissions, the Court finds that Plaintiff fails to point to sufficient evidence in the record to create a genuine issue of material fact regarding whether he was harassed due to activity protected by Title VII. Even assuming that Plaintiff engaged in activity protected by Title VII and that UPS was aware of that activity, the conduct to which Plaintiff points is not sufficiently severe or pervasive to support a claim for retaliatory harassment.

That supervisory personnel continually monitored the Plaintiff and subjected him to criticism is not adequate to create a genuine issue of material fact regarding whether the purported harassment was sufficiently severe or pervasive to support a claim of retaliatory harassment. *See Broska v. Henderson,* 70 Fed.Appx. 262, 270 (6th Cir.2003)(finding purported retaliatory harassment not sufficiently severe or pervasive where employee claimed that supervisors continually monitored him and subjected his work to criticism).[11] Fur-

had been terminated in the past for filling in a date on a DOT card or possessing an expired DOT card. However, it is undisputed that no employee at Plaintiff's facility had ever been accused of *falsifying* his DOT card rather than merely possessing an expired DOT card.

10. Based upon a review of Plaintiff's complaint and amended complaint, as well as his submissions in response to Defendant's mo- tion for summary judgment, Plaintiff does not appear to allege that he was terminated in retaliation for activity protected under Title VII, but only that he was harassed due to such activity.

11. The Sixth Circuit has found that allegations similar to those that Plaintiff makes are insufficiently severe or pervasive to support a claim for retaliatory harassment under Title

ther, Plaintiff does not present sufficient evidence regarding whether there was any causal connection between any protected activity and any alleged harassment. Moreover, even if Plaintiff had adduced sufficient evidence to meet a prima facie case of retaliatory harassment, UPS has asserted legitimate, nondiscriminatory reasons for the activities that Plaintiff claims amounted to harassment. Plaintiff fails to present sufficient evidence to create a genuine issue of material fact regarding whether those reasons were pretext for retaliation. Accordingly, summary judgment is GRANTED regarding Plaintiff's claim of retaliatory harassment.

.

## C. Racial Harassment

■ Title VII prohibits harassment that creates a hostile or abusive work environment. *Newman v. Federal Exp. Corp.*, 266 F.3d 401, 405 (6th Cir.2001) (citations omitted). In order to establish a *prima facie* case of hostile work environment racial harassment under Title VII, a plaintiff must show:

1) that he is a member of a protected class; 2) that he was subjected to unwelcome racial harassment; 3) that the harassment was based on race; 4) that the harassment had the effect of unreasonably interfering with his work performance by creating an intimidating, hostile, or offensive work environment;

and 5) the existence of employer liability.

*Id.* (citations omitted). In determining whether there was a hostile or abusive workplace environment, the Court looks to the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citations omitted). Additionally, the work environment must be both objectively and subjectively offensive. *Newman,* 266 F.3d at 405 (citations omitted).

■ Having reviewed the record and the parties' submissions, the Court finds that Plaintiff fails to adduce sufficient evidence to create a genuine issue of material fact regarding whether any alleged harassment was based upon his race. Plaintiff does not point to any overtly racial actions or comments by any UPS supervisors or managers. Although conduct that is not overtly racial may be considered in a hostile environment analysis, Plaintiff must show that, but for his race, he would not have been the object of harassment. *Bowman v. Shawnee State University,* 220 F.3d 456, 463 (6th Cir.2000). Plaintiff fails to do so. Plaintiff does not point to any evidence that he held a subjective belief that any actions by UPS employees or supervisors were hostile, offensive or intimidating due to his race.[12] Accordingly,

VII. *See Broska, supra; Akers v. Alvey,* 338 F.3d 491, 499 (6th Cir.2003) (supervisor ignored employee, encouraged coworkers to do the same, criticized her work, and withheld her mail); *Diamond v. U.S. Postal Service,* 29 Fed.Appx. 207, 213, (6th Cir.2002) (supervisors unjustifiably threatened employee with discipline). Where the Sixth Circuit has found retaliatory harassment to be sufficiently severe or pervasive, the allegations were far more serious than in the instant case. *See Morris,* 201 F.3d at 793 (finding purported retaliatory harassment sufficiently severe or

pervasive where supervisor called employee on the telephone over thirty times to harass her, sat outside her office making faces at her, followed her home from work and made an obscene gesture at her, destroyed a television she watched at work, and threw roofing nails onto her home driveway on several occasions).

12. At his deposition, Plaintiff testified regarding his allegations that he was harassed by his supervisor, Kay Kennedy: " ... I didn't feel like she was singling me out because I was

summary judgment is GRANTED regarding Plaintiff's claim of racial harassment.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's case is DISMISSED. Because the Court has granted Defendant's Motion for Summary Judgment as to all of Plaintiff's claims, Defendant's Motion to Strike is DENIED as moot.

black ...." (Appendix to Def.'s Mot. for Summ. J., Ex. 1, at 228.) Moreover, Plaintiff also admitted at his deposition that numerous other allegedly harassing activities were not due to his race. (*Id.* at 14–15, 227–28.)